

# IN THE
## TENTH COURT OF APPEALS

_____

### No. 10-14-00057-CV

## IN THE INTEREST OF R.M.R. AND A.L.R., CHILDREN

_____

**From the 249th District Court
Somervell County, Texas
Trial Court No. D04777**

_____

## MEMORANDUM OPINION

_____

Miguel R. appeals from a judgment that terminated his parental rights to his children, R.M.R. and A.L.R.  TEX. FAM. CODE ANN. § 161.001, et. seq.  (West 2008). Miguel complains that the evidence was legally and factually insufficient to support the trial court's finding that he failed to support his children, contumaciously refused to submit to a lawful court order, used a controlled substance in a manner that endangered the children, failed to comply with the provisions of a court order to obtain the return of the children, and that the termination was in the children's best interest. Miguel also complains that he received ineffective assistance of counsel and that the trial court abused its discretion by not allowing one of Miguel's witnesses to testify. Because we find no reversible error, we affirm the judgment of the trial court.

The procedural history of this proceeding has been lengthy and somewhat complex. In early 2010, the children were removed by the Department of Family and Protective Services from Miguel and Crystal, Miguel's wife, because Crystal tested positive for methamphetamines at the birth of A.L.R. During the investigation, Miguel and Crystal each signed a written acknowledgment that they had used methamphetamines very recently. Initially, the children were placed with a relative pursuant to a family safety plan; however, that placement ended after approximately one month when Miguel and Crystal violated the agreement to not be around the children. The children were then placed in foster care, and they remain with the same foster parents, the Blevins.

The trial court entered various orders during the pendency of the case that contained various requirements of Miguel and Crystal for them to have the children returned to them. The first order entered was a temporary order entered in February of 2010, which required them in part to begin counseling within thirty days, complete a drug assessment and participate in random drug screens, complete parenting classes, pay child support, and to participate in the Department's Service Plan throughout the pendency of the case. Each service plan prepared for Miguel contained provisions that he abstain from the use of illegal drugs and from being around individuals who use illegal drugs. Crystal tested positive for methamphetamines multiple times during the pendency of the case. Miguel admitted to the use of marijuana. Crystal and Miguel continued residing together during this time. Additionally, Miguel did not remain

current on his child support throughout the pendency of the case.

In December of 2010, the parties entered into a mediated settlement agreement which gave several specific requirements for Miguel to complete in order for the children to be returned to him. The agreement provided for the case to be extended for six months and required Miguel in part to not live with or associate with Crystal or any other known drug users. Less than a week after the agreement was reached, an unannounced visit was made to Miguel's home. Crystal and her mother were seen running out the back door. Crystal did not have pants on when she left the house. Miguel stated that Crystal and her mother had just arrived in order to get the rest of her belongings from the residence; however, there was no evidence of any packing in the residence. Crystal and Miguel were both arrested for interference with public duties. An immigration hold was placed on Miguel at that time, and ultimately Miguel was deported back to Mexico.

During the pendency of the case Crystal signed an affidavit of voluntary relinquishment of her parental rights and her rights were terminated. In August of 2011, a final order was entered naming the Department the sole managing conservator of the children and Miguel was named a possessory conservator. At the first placement hearing in October of 2011, the Department decided that it was going to recommend placing the children with Miguel in Mexico based on a home study that had been conducted on his home and the home of his parents. The trial court entered an order approving the placement of the children in Mexico in October of 2011; however, the

children were not sent to Mexico at that time. In March of 2012, the Department filed a petition to modify seeking to have Miguel and his mother named joint managing conservators of the children. The Blevins's filed a petition in intervention and sought a restraining order to prevent the children from being taken out of the country, which was denied by the trial court after a hearing in early April of 2012.

The Blevins's filed a petition for a writ of mandamus with this Court on April 27, 2012 which was denied on August 2, 2012. *See In re Melissa Blevins*, No. 10-12-00136-CV, 2012 Tex. App. LEXIS 6422 (Tex. App.—Waco August 2, 2012). The Blevins's then filed a petition for a writ of mandamus with the Texas Supreme Court on August 3, 2012 which was abated and sent to the trial court for reconsideration on November 1, 2013. *See In re Melissa Blevins*, No. 12-0636, 2013 Tex. LEXIS 901 (Tex. November 1, 2013).

During the abatement from the Supreme Court, the trial court conducted the final hearing on the Blevins's petition in intervention to terminate the parent-child relationship between Miguel and the children. The Department abandoned its petition to modify the parent-child relationship and declared that it was "neutral" in the proceedings as it related to termination, but was not in support of the children being returned to Mexico at that time. After a hearing before the bench, the trial court granted the petition to terminate the parent-child relationship between Miguel and the children based on three statutory grounds in section 161.001, subsections (F), (I), & (P). TEX. FAM. CODE ANN. § 161.001 (F), (I), & (P) (West 2008). This appeal followed. The petition before the Supreme Court was reinstated and dismissed as moot on April 4, 2014. *See In*

*re Melissa Blevins*, No. 12-00636, 2014 Tex. LEXIS 283 (Tex. April 4, 2014).

*Sufficiency of the Evidence in Termination Proceedings*

Due process requires application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See* TEX. FAM. CODE ANN. § 101.007 (West 2008). *See also In re C.H.*, 89 S.W.3d 17, 25-26 (Tex. 2002). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007 (West 2008).

We review the legal and factual sufficiency of the evidence for a predicate ground and best interest pursuant to the well-established standards of review set by the Texas Supreme Court. *See In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) and *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (legal sufficiency); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) and *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency).

The Family Code permits a court to order termination of parental rights if the petitioner establishes one or more acts or omissions enumerated under subsection (1) of section 161.001 and also proves that termination of the parent-child relationship is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001 (West 2008); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976).

*Section 161.001(1)(P)*

Section 161.001(1)(P) provides that the court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and failed to complete a court-ordered substance abuse treatment program.

Miguel argues that the evidence was legally and factually insufficient to establish that he used a controlled substance. At the time of the birth of A.L.R., Miguel and Crystal signed acknowledgments that they had each used methamphetamines the previous day. The Department, Miguel, and Crystal entered into a safety plan and the children were placed with relatives. Approximately one month later, Miguel and Crystal were caught in violation of the safety plan by being around the children and the children were removed from the relatives. At that time, there was testimony that Miguel had tested positive for methamphetamines and had signed another acknowledgment that he had used methamphetamines several days prior to that date. The acknowledgments were not admitted into evidence during the final hearing; however, both the CPS supervisor and the CASA supervisor testified that Miguel had signed the acknowledgment that admitted to methamphetamine use.

Miguel complains that the acknowledgments were not properly before the trial court because they were not admitted and were not properly the subject of judicial notice by the trial court. Early in the final hearing, the trial court took judicial notice of

the record in this cause. We agree with Miguel that while a trial court may properly take judicial notice of its records, it may not take judicial notice of the truth of the allegations within those records. *See Tschirhart v. Tschirhart*, 876 S.W.2d 507, 508 (Tex. App.—Austin 1994, no writ). However, the testimony of the Department supervisor and the CASA supervisor constitute evidence independent of the trial court's taking of judicial notice.

After the initial positive test, Miguel was drug tested several times throughout the pendency of the case and was negative each time for illegal substances. Miguel denied using methamphetamines and claimed that he did not understand the acknowledgment because it was in English and he does not read or speak English well. Miguel did admit to using marijuana; however, although it is illegal, marijuana is not a controlled substance as defined by chapter 481 of the Health and Safety Code. The trial court was called upon to determine which testimony it chose to believe, and the trial court found that the testimony that Miguel did admit to using methamphetamines and tested positive for methamphetamines was true.

Viewing the evidence with the appropriate standards for legal and factual sufficiency of the evidence, we find that the evidence was legally and factually sufficient for the trial court to have found that Miguel used a controlled substance. Miguel does not challenge the sufficiency of the evidence as to the other elements of section 161.001(1)(P) relating to endangerment and his failure to complete a court-ordered substance abuse treatment program. Because the evidence was legally and

factually sufficient, we overrule issue three. Because we have found the evidence sufficient to support one ground of termination, we do not reach issues one or two.

*Best Interest of the Children*

In his fourth issue, Miguel complains that the evidence was legally and factually insufficient for the trial court to have found that termination of his parental rights was in the best interest of the children. In determining whether termination of Miguel's parental rights was in the children's best interest, we consider the well-established *Holley* factors. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). There is no requirement that all of these factors must be proved as a condition precedent to parental termination, and the absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the children's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Evidence establishing one of the predicate grounds under section 161.001(1) also may be relevant to determining the best interest of the children. *See In re C.H.*, 89 S.W.3d at 27-28.

Miguel argues that the only evidence relating to the best interest of the children was merely "self-serving testimony from the Blevins family" but that he testified to many of the *Holley* factors. The Department officially maintained a "neutral" stance relating to termination of Miguel's parental rights; however, there were several concerns relating to Miguel's residence in Mexico and family support. Miguel did not complete his service plan prior to his incarceration and continued to have a relationship with Crystal even when it was specifically required for him not to do so in order to have

the children returned to him. Miguel's mother was supportive of the children coming to Mexico; however, Miguel's father was not. There were questions regarding Miguel's drinking and Miguel admitted to marijuana use. His plan for child care consisted of taking a common law wife to care for the children or having his mother or sisters to care for them.

Miguel was illegally in the United States and had been deported three times at the time of the final hearing. Although he knew it would be a felony offense for him to attempt to return, he consistently threatened to return to the United States to take the children if they were not returned to him. No witness testified in favor of the children returning to Mexico other than Miguel even if the termination was not granted. The CASA supervisor testified that she believed that termination of Miguel's parental rights was in the best interest of the children. The attorney ad litem for the children was uncertain as to whether termination was in the children's best interest but felt strongly that the children should remain with the Blevins's regardless of whether Miguel's parental rights were terminated or not.

Conversely, the Blevins's have taken R.M.R. and A.L.R. into their home and consider them to be their children. The Blevins's have had two biological children since R.M.R. and A.L.R. were placed with them and all of the children are very bonded to each other. The Blevins's have taken both children to speech therapy when needed and have met the children's medical needs. R.M.R. has been diagnosed with ADHD and prescribed medication, and there was concern that his treatment would not continue in

Mexico. When he was placed with the Blevins's, R.M.R. exhibited symptoms of anger which resolved over time. The Blevins's have also ensured that the children are receiving some type of instruction in the Spanish language.

When asked, four-year-old A.L.R. would state that she wanted to live with Miguel; however, A.L.R. had not seen Miguel since she was eleven months old. While Miguel argues that this is because of Miguel's incarceration due to an immigration hold, we note that Miguel was arrested for interfering with public duties and was in this country illegally. There is no one more responsible for Miguel's incarceration than Miguel himself.

Miguel paid child support very sporadically, both prior to the final hearing in August of 2011 and in the time leading up to the final hearing. Miguel did not pay child support even while he was not incarcerated and did not send letters, Christmas or birthday gifts, or attempt to have a relationship with the children other than telephone calls arranged by the Department whether he was or was not incarcerated.

On July 1, 2013, Miguel was ordered to take a drug test and to submit the results to the trial court by July 31, 2013. Miguel did not take a drug test until the week before the final hearing in early February of 2014.

Miguel testified that he had recently gotten better employment in order to make more money and had fixed up his residence for the children. He testified that he did not ever use methamphetamines. Miguel was seeking the return of the children to him in Mexico so that they would understand their Mexican heritage and to be with their

family.

Viewing the evidence using the appropriate standards for legal and factual sufficiency of the evidence, using the *Holley* standards as a guide, we find that the evidence was legally and factually sufficient for the trial court to have found that termination of Miguel's parental rights was in the best interest of R.M.R. and A.L.R. We overrule issue four.

*Section 161.001(1)(O)*

In his fifth issue, Miguel argues that the evidence was legally and factually insufficient for the trial court to have found that he failed to complete a court order that set forth requirements for him to have the children returned to him. However, the trial court did not include this predicate act in its final judgment; therefore, it is not necessary to address this issue.

*Ineffective Assistance of Counsel*

In his sixth issue, Miguel complains that he did not receive effective assistance of counsel because he failed to file an answer or assert any affirmative defenses relating to his inability to pay child support or to visit the children due to his incarceration due to an immigration hold, failed to respond to the Blevins' request for disclosure, failed to ensure that his witnesses from the legal department of the Mexican consulate remained outside of the courtroom after the Rule had been invoked, failed to object to the trial court taking judicial notice of the file, failed to obtain a business records affidavit or a sponsoring witness to ensure the admissibility of a drug test taken by Miguel in Mexico

shortly before the final hearing, failed to obtain a business records affidavit or sponsoring witness in order to properly admit the home study on Miguel's home in Mexico, and failed to file a motion to modify temporary orders relating to child support.

The statutory right to counsel in parental rights termination cases includes a guarantee that counsel will perform effectively. *In re B.G.*, 317 S.W.3d 250, 253-54 (Tex. 2010). In parental rights termination cases, the Texas Supreme Court has adopted the *Strickland* test that establishes the standards for effective assistance in criminal cases. *See In re M.S.*, 115 S.W.3d 534, 544-45 (Tex. 2003) (*citing Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984)). "Under the well-established *Strickland* test, proving ineffective assistance of counsel requires a showing that (1) counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment, and (2) the deficient performance prejudiced the defense, which 'requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *In re H.R.M.*, 209 S.W.3d 105, 111 (Tex. 2006) (*quoting M.S.*, 115 S.W.3d at 545). If both prongs of the *Strickland* test are not met, an appellant's ineffective assistance of counsel claim fails. *See In re M.S.*, 115 S.W.3d at 545; *see also Strickland*, 466 U.S. at 700.

Under the first prong, the appellant must establish that trial counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. Trial counsel's conduct constitutes ineffective assistance only if the challenged conduct is so outrageous that no competent attorney would have engaged in it. *See In re*

*M.S.*, 115 S.W.3d at 545; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Under the second prong, an appellant must establish that there is a reasonable probability that but for his attorney's deficient performance, the outcome of his case would have been different. *See Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. "Reasonable probability" is that which is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).

In evaluating trial counsel's performance, we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance and was motivated by sound trial strategy. *In re M.S.*, 115 S.W.3d at 545. An appellant bears the burden to overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. When the record is silent concerning the reasons for trial counsel's actions, we do not engage in speculation to find ineffective assistance of counsel. *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 623 (Tex. App. — Houston [1st Dist.] 2009, pet. denied) (*citing Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App. — Houston [1st Dist.] 1996, no pet.)). Accordingly, ineffective assistance claims must be firmly founded in the record, and the record must affirmatively show the alleged ineffectiveness. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001) (*quoting Thompson*, 9 S.W.3d at 814).

Miguel did not file a motion for new trial, and his trial counsel was not afforded an opportunity to respond to the allegations of ineffective assistance of counsel. Thus,

no explanation as to any potential trial strategy has been given. We have reviewed the record and, even if we were to assume that Miguel met the first prong of *Strickland*, we do not find that Miguel has met the second prong of *Strickland*, which requires that there is a reasonable probability that the result would have been different.

The record does not establish that Miguel was denied the opportunity to present any witnesses or evidence due to his failure to respond to discovery other than the drug test he took of his own volition the week prior to the final hearing. We have determined that there was sufficient evidence for the trial court to have found that Miguel used a controlled substance in early 2010, and none of Miguel's complaints regarding ineffective assistance would have been relevant to that determination. There was testimony as to some of the substance of the home study which was not excluded and that he had taken a drug test the week before trial in February of 2014, rather than in July of 2013 when it was ordered.

Additionally, Miguel's failure to complete services, his repeated contact with Crystal even in violation of the mediated settlement agreement, his admitted marijuana use, and his threats of illegally returning to the United States to take the children, when taken with the current placement of the children, more than sufficiently support the trial court's finding that termination of Miguel's parental rights was in the best interest of the children. None of Miguel's complaints of ineffective assistance were caused by or affected by this evidence. Because Miguel has not met his burden under *Strickland*, we overrule issue six.

*Exclusion of Witness Testimony*

In his seventh issue, Miguel complains that the trial court abused its discretion by refusing to allow a representative from the Mexican consulate to testify at the final hearing. At the start of the final hearing, the Blevins's invoked the Rule. *See* TEX. R. EVID. 614. Two of Miguel's witnesses appeared at trial after the testimony was underway, and the trial court asked Miguel's trial counsel if he wanted the witnesses put under the Rule. Miguel stated that he did not, and the parties all affirmatively stated that they had no objection to the witnesses remaining in the courtroom.

During Miguel's case-in-chief, he attempted to call one of the representatives to testify regarding communications between the consulate and the Department and between the consulate and Miguel relating to a drug test. In addition, Miguel sought to have the witness testify that Miguel had indeed taken a drug test the week before trial.

Even if we assume without deciding that the trial court erred by excluding the witness because of a violation of the Rule, in order to constitute reversible error we must determine that the error probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1). Miguel has not set forth any argument that the Mexican consulate was required to be notified of the drug test and had a duty to notify Miguel of the trial court's order to take a drug test, or that the witness from the Mexican consulate would be able to authenticate the drug test results from the prior week's test. We do not find that the harm in excluding the witness, if any, probably caused the rendition of an improper judgment. We overrule issue seven.

*Conclusion*

Having found no reversible error, we affirm the judgment of the trial court.[1]


TOM GRAY
Chief Justice


Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed October 9, 2014
[CV06]



---

[1] In this proceeding the appellant was determined to be indigent and allowed to proceed without the advance payment of cost. *See* TEX. R. APP. P. 20.1. The ability to proceed without the advance payment of cost does not, however, mean that the cost is not owed by an unsuccessful appellant. *See In re McGowan*, No. 10-10-00208-CV, 2010 Tex. App. LEXIS 5046 (Tex. App.—Waco June 30, 2010, orig. proceeding) (mem. op.). Because we have affirmed the judgment of the trial court, and thus ruled against the appellant in this appeal, the judgment of the Court will award the appellee the appellate cost paid by the appellee, if any, and all unpaid cost of the appeal will be taxed against the appellant. The Clerk of this Court is hereby ordered to write off all unpaid filing fees for this proceeding from the accounts receivable of the Court. The write off, however, in no way eliminates or reduces the fees owed by the appellant pursuant to the Court's judgment.